## Appeal of BRUCE & HUMAN DRUG CO.    Docket No. 129.

A deficiency determined by the Commissioner on the basis of a report of an examining revenue agent which is erroneous on its face, will be disallowed notwithstanding the rule of this Board that the taxpayer must bear the burden of proof on his appeal.

Submitted November 20, 1924; decided January 16, 1925.

Mr. L. C. Perry, for the taxpayer.

*Willis D. Nance*, Esq. (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before JAMES, STERNHAGEN, and TRUSSELL.

This is a tale of two audits.

### FINDINGS OF FACT.

The taxpayer is a retail druggist, incorporated under the laws of Texas. The store manager also kept the books of account. Apparently the books served the purpose of the business but were quite inadequate to solve the mysteries of the income tax.

A revenue agent made an examination. The records—that is, the primary records—were apparently not incomplete; they were merely inaccurate. The taxpayer had made an income-tax return by setting down what it believed the books showed as to the gross profits from sales, the expenses, and the net income.

The examiner found errors. He found that certain credits against merchandise for goods returned, for discounts earned, and other like credits had apparently not been accounted for in the computation of cost of goods sold. He did not check or reprice the opening inventory; he apparently did check the gross sales at least in part; he did not verify the closing inventory; he "adjusted" the gross income from sales by decreasing the cost of goods by the errors alleged to have been discovered. He thus determined net income by adding to the taxpayer's reported net income the sum of the errors discovered without verifying the net income originally returned. The agent also found certain balance sheets which at the cost of some labor he could have verified. They were contained in the minute book. He adopted them as his own without change except for minor adjustments not here in question. He found certain surplus accounts on those balance sheets. He had determined a certain net income. He used the formula "surplus at beginning plus income less withdrawals, equals surplus at end." But when he applied the formula, for instance to 1918, he found:

| | |
|---|---:|
| Surplus at beginning | $16,486.50 |
| Plus taxable net income (as he had determined it) | 7,964.14 |
| | 24,450.64 |
| Less deductions not allowed in computing taxable income | 86.67 |
| | 24,363.97 |
| Less dividends | 2,000.00 |
| Theoretical surplus at end | 22,363.97 |
| Actual surplus on minute book | 20,102.17 |
| Difference | 2,261.80 |

This difference (which was nearly twice the addition to net income) the examining agent made no effort to reconcile with his determination of income but *deducted* it from surplus as an "adjustment" with the note:

The adjustments, as shown to balance, *seem* to have been omission of assets from balance sheets rather than withdrawals. (Italics ours.)

Over the three years these "adjustments" were as follows:

| | |
|---|---:|
| 1918 | $2,261.80 |
| 1919 | 5,562.95 |
| 1920 | 1,195.22 |

Upon this "audit" the Commissioner proposed and proposes to assess the deficiency asserted.

The report of the examining agent was duly forwarded to his supervisor. By him in due course it was sent to Washington. There it and the return of the taxpayer were "audited." The taxpayer was notified of the discovery of a deficiency. An appeal was taken to the Commissioner. The case was heard in the field by a traveling division of the Committee on Appeals and Review.

The taxpayer, in its petition to this Board, sets forth that as a result of that hearing it was suggested that an auditor be employed to determine what was its net income as in truth disclosed by its books.

The taxpayer employed an auditor.

The audit is incorporated in the petition addressed to the Board. It is accompanied by a certificate which reads in full as follows:

### AUDITORS CERTIFICATE.

We have audited the books and accounts of the Bruce & Human Drug Co. for the years 1918 and 1920, and certify that for the year 1918 the net income was the sum of $5,615.67, and the taxable income for that year was the sum of $5,702.34, and the balance sheets at the beginning and end of that year, in substantiation of the net income shown above, the detail of which is set out on page 4 of this petition, correctly sets forth the facts as shown by the books and records of said company;

And certify that the net income for the year 1919 was the sum of $3,235.97, and the taxable income for that year was the sum of $4,822.17, and the balance sheets at the beginning and end of that year, in substantiation of the net income shown above, the detail of which is set out on page 7 of this petition, correctly sets forth the facts as shown by the books and records of said company;

And certify that the net income for the year 1920 was the sum of $925.21, and the taxable income for that year was the sum of $947.21, and the balance sheets at the beginning and end of that year, in substantiation of the net income shown above, the detail of which is set out on page 10 of this petition, correctly sets forth the facts shown by the books and records of said company.

SCHOOLAR, BIRD & Co.,
C. H. SCHOOLAR,
*Certified Public Accountant.*

DALLAS, TEX., *August 30, 1924.*

This audit is in good form. It contains no inconsistencies upon its face. It shows sales, purchases. inventories, expenses, net income, balance sheets (which agree with the revenue agent so far as is here material), and a reconcilement of surplus for each year. Supported as it is by the above certificate and by affidavits of the president and secretary of the taxpayer company, the audit and the petition of which it is a part set forth facts which, if proven, establish a clear case for the taxpayer. The audit shows, in comparison with the taxpayer's original return and the revenue agent's report, tax liability as follows:

|  | 1918 | 1919 | 1920 |
|---|---|---|---|
| The taxpayer paid | $1, 567. 70 | $1, 435. 82 | None. |
| The Commissioner claims | 2, 026. 23 | 2, 170. 65 | $54. 04 |
| The auditor computes | 1, 096. 68 | 282. 22 | None. |

But the petition is not evidence, nor the audit legal proof. To supply such proof depositions of the president and secretary of the taxpayer and of the head of the accounting firm and his auditor who made the above audit were taken and these parties were subjected to cross-examination.

The president of the taxpayer, although he had made affidavit to the correctness of the conclusions of the auditor, testified on cross-examination:

Q. In other words, your knowledge of the books and records is based upon the faith that you have in your employees.—A. Yes, as far as keeping the books and balancing them up, etc., is concerned.

The secretary, store manager, and bookkeeper, who also executed an affidavit as to the correctness of the auditor's conclusions, testified on direct examination:

Q. When you made up your profit and loss account for those years did you know how to prove the accuracy of your resultant net profit?—A. I do not suppose I could have, as I am not an accountant.

Q. Then if the net profit as shown by your profit and loss account was one figure and that shown by your surplus account was another, would you have realized that there was an error in your profit and loss account or your balance sheet?—A. I know that they should balance.

Q. Did you see that they did balance?—A. No, because I thought that this first page of income tax return was all that it was necessary to make. We have never kept balance sheet more than was on the minute book, just simply liabilities and resources. We never tried to keep one before this came up.

And on cross-examination:

Q. Do you know the difference between double and single entry?—A. Can't say I do.

Kennedy, the auditor, who actually prepared the audit above referred to, was examined at length.

Q. Explain in detail the extent of your audit.—A. I made the audit from what is termed the cash point of view in order to arrive at the net results because of the fact that the ledgers contained numerous errors and it was my opinion that an audit could be made quicker and more accurately by using the cash receipts and the cash disbursements, adjusting to obtain the total sales with accounts receivable and adjusting to obtain the total cost of goods sold with the accounts payable, and increase or decrease in inventory.

Q. In other words, you did not attempt to base your audit on original vouchers?—A. Not entirely; there were no invoices examined.

Q. Your audit did not cover any other records than those that you have identified?—A. No.

Q. Could you say from your knowledge of the situation that the audit could not have been made from the original vouchers?—A. It could have been made from the original vouchers.

Q. Did you find the original vouchers available for the audit?—A. Yes.

Q. Did you make any attempt to make the audit on the basis of original vouchers and invoices?—A. No.

Q. Now, Mr. Kennedy, will you explain in detail, illustrating by an example just how you arrive at the purchase of merchandise for each year covering your audit?—A. The total cash expended comes from two sources, payments through the bank by check and payments by cash through the cashbook; the total of those disbursements is the total expenditures for the year, the correctness of which is proven by the bank balance and the cash on hand as shown by the cashbook. Out of this expenditure is deducted expense items and dividends. This sum leaves the amount expended in the payment of merchandise purchased. For instance, if the total expenditures for the period are $1,000 and the expenses are $200, $1,000 less $200 leaves the amount expended for merchandise, and in order to get the net purchases, if the accounts payable have increased $100, then this $100 added to the $800 will give $900 as the total purchases for the period.

Q. How did you arrive at the accounts payable in ascertaining the increase or decrease?—A. *They were taken from the balance sheet as contained in the minute record.*

Q. Did you have the minute records at the time you made the audit?—A. Yes.

Q. Did you endeavor to verify and ascertain the correctness of the accounts payable in each year that was covered by your audit?—A. *No, I satisfied myself that the methods as used by Mr. Perry and the small amount of the accounts payable, that they were correct and I was willing to accept them.*

Q. Did you make no personal effort to verify the correctness of the accounts as shown in the balance sheet used?—A. *No.*

Q. What method was used by you in arriving at the sales for each year covering your audit?—A. The sales were calculated by taking the cash sales plus the collections, to which were added the increase in accounts and notes receivable, if there was an increase, or a deduction was made if there had been a decrease in accounts and notes receivable.

Q. How did you arrive at the accounts and notes receivable?—A. *I accepted the figures as contained in the balance sheet in minute book.*

Q. You made no effort to verify the accuracy of the accounts and notes as submitted to you in the balance sheet?—A. No; I confined myself to an inquiry as to the method which Mr. Perry used.

Q. The audit you made was supposed to be a detailed audit, am I to understand?—A. Yes. [Italics ours.]

So this "audit" turns out to have been the reverse of the one made by the revenue agent—the revenue agent "adjusted" surplus to agree with his predetermined net income but showed his adjustment on the face of his audit; the taxpayer's "auditor" "adjusted" cost of sales and gross sales to force into agreemnt his increase in surplus taken from balance sheets at the beginning and end of the year. He did not verify his balance sheets and therefore arrived at an unverified net income. He did *not* show these "adjustments" on the face of his audit. Upon the credit of such an "audit" he asks that the deficiency asserted by the Commissioner be disallowed and asks inferentially a refund of taxes for his client.

### DECISION.

The deficiencies heretofore determined by the Commissioner in the sum of $458.33 for 1918; $734.81 for 1919, and $54.04 for 1920 are disallowed.

### OPINION.

JAMES: There were introduced in evidence depositions of the president of the taxpayer, its secretary, the auditor who made the examination of its books, and the head of the accounting firm employed for such examination. These depositions show that the audit was made upon a basis which could never prove any income inconsistent with the reconcilement of surplus as between the beginning and end of the year. The depositions also show that the auditor made no examination of the balance sheets at the beginning and end of each of the several years and therefore could not certify to their correctness or prove, by the audit he made, the correctness of the net income of the taxpayer which his audit purported to show.

There was also introduced in evidence the report of the examining revenue agent. This report shows that the net income ascertained by him was arrived at by adding certain alleged omissions of income to the net income returned by the taxpayer on his original return, without a verification of the entire net income, either by an examination of all the income and expenses, or by a proof of the opening and closing balance sheets.

We are satisfied from the entire record that the proposed deficiency is not well founded and it must, therefore, be disallowed.